STATE OF NORTH CAROLINA v. RALPH WAYNE RANKIN

No. 7318SC257

(Filed 23 May 1973)

**Larceny § 7— larceny from the person — sufficiency of evidence**
    In a prosecution charging defendant with larceny of $15 from the person of Lucille Langston, evidence was sufficient to be submitted to the jury where it tended to show that defendant was present when one Crawford snatched the victim's purse; he immediately ran away with the purse snatcher; he accompanied the purse snatcher on foot down the street some several minutes later; he entered a department store with the purse snatcher for the purpose of making a purchase; and he fled when accosted by police officers.

    Judge HEDRICK dissenting.

APPEAL by defendant from *Crissman, Judge,* 23 October 1972, Regular Criminal Session of GUILFORD Superior Court, Greensboro Division.

Defendant, Ralph Wayne Rankin, was charged in a bill of indictment, proper in form, with the larceny of $15.00 from the person of Lucille M. Langston on 7 October 1972. Defendant was found guilty as charged and from a judgment imposing a prison sentence of from eight to ten years, he appealed to this Court.

*Attorney General Robert Morgan by Associate Attorney Norman L. Sloan for the State.*

*Assistant Public Defender Dallas C. Clark, Jr., for defendant appellant.*

CAMPBELL, Judge.

Defendant assigns as error the denial of his motion for judgment as of nonsuit.

The evidence, when considered in the light most favorable to the State, tends to show the following:

At about 2:30 p.m. on 7 October 1972, Mrs. Lucille M. Langston, an employee of the Greene Insurance Agency located on Lewis Street in the City of Greensboro, was returning to the place of her employment after having eaten lunch at the S & W Cafeteria. Mrs. Langston walked along Elm Street to Coe's Grocery Store, then turned up "a little driveway . . . instead of going around the grocery store and up to the Lewis Street entrance" of the Greene Insurance Agency. Mrs. Langston testified:

" . . . I was almost to the parking area where my car was parked when someone jerked at my pocketbook and said, 'Give me your money.' I had not seen that person before my pocketbook was jerked. I did not know anyone was behind me. The person who jerked my pocketbook was standing right behind me when I turned. He jerked it again after I turned and I let the pocketbook loose and I let him have it.

When I turned around I saw three men standing five or six feet apart. But the one grabbed the pocketbook and he opened it and took the billfold out and then he threw the pocketbook back down. Then he took the money out of the billfold and threw it on the ground. . . .

Two of the men that were in the parking lot never spoke. The one that took the pocketbook spoke after he

threw it on the ground. He said, 'You better not come this way.' Then they all started running. I got a look at all three of them. The two that did not grab for the pocketbook were about as far as from me to the solicitor. The one that grabbed the pocketbook was right at me. The three that were in the parking lot are seated over there, they are the defendants. They left running around the buildings. . . . "

Mrs. Langston identified one Crawford as the man who snatched her pocketbook and took the money. She identified defendant Rankin and one Speed as the other two men in the parking lot.

Raymond McDonald, sitting in an automobile near the scene, heard Mrs. Langston hollering and "went to her and asked what had happened." McDonald saw three men run from the scene and went to Coe's grocery and requested that someone telephone the police. McDonald testified that about five minutes later he observed these three men walking north on South Elm Street. McDonald and a police officer who had arrived on the scene followed the three men into Blumenthal's Department Store and asked them to come outside. While the officer made a radio call from his police car to headquarters, the three men crossed the street to a bus stop. When the officer told Crawford that he was under arrest, all three fled.

The defendant was not only present when Crawford snatched the pocketbook, but he shows by all of his actions and conduct that he was encouraging the actual purse snatching. This is shown by his immediate running with the purse snatcher; his accompanying the purse snatcher on foot down the street some several minutes later; his going into Blumenthal's Department Store with the actual purse snatcher for the purpose of making a purchase. The jury could find that all three were participating and were spending some of the proceeds of the crime. The second running when accosted by the police officers was an additional circumstance to be considered. We think a jury question was presented.

There was no exculpatory statement introduced by the State which was binding upon the State and which eliminated this defendant as one of the participants in the crime. We, therefore, conclude that this case is clearly distinguishable from *State v. Gaines,* 260 N.C. 228, 132 S.E. 2d 485 (1963). It is

State v. Rankin

more analagous to *State v. Washington,* 17 N.C. App. 569, 195 S.E. 2d 1 (1973). We have considered the other assignments of error and find no merit in them. The defendant was afforded a fair trial and no prejudicial error appears.

No error.

Judge VAUGHN concurs.

Judge HEDRICK dissents.

Judge HEDRICK dissenting.

While the evidence tends to show that defendant was present when Crawford *actually* committed the crime charged and that defendant fled with the "purse snatcher" and Speed, in my opinion there is no evidence from which the jury could find that the defendant actually committed the crime or that he "by word or deed, gave active encouragement to the perpetrator of the crime or by his conduct made it known to such perpetrator that he was standing by to lend assistance when and if it should become necessary." *State v. Ham,* 238 N.C. 94, 97, 76 S.E. 2d 346, 348 (1953).

In short, the evidence tends to show only that defendant was present when a crime was committed and that he fled and remained with the person who committed the offense.

In *State v. Washington,* 17 N.C. App. 569, 195 S.E. 2d 1 (1973), cited by the majority as being analogous, the evidence contained the additional element that Washington clearly aided and abetted Oakley in the theft of the jewelry by repeatedly attracting the attention of the only clerk in the store.

The introduction by the State of statements tending to exculpate the defendant in *State v. Gaines,* 260 N.C. 228, 132 S.E. 2d 485 (1963) was not controlling and the absence of such statements in the present case in my opinion is not determinative. I vote to reverse.